**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **In re** | § | **Chapter 11** |
| | § | |
| **GLOBAL GEOPHYSICAL** | § | |
| **SERVICES, LLC, *et al.*[1]** | § | **Case No. 16-20306** |
| | § | |
| **Debtors.** | § | **Joint Administration** |
| | § | **Requested** |
| | § | |

## JOINT PREPACKAGED PLAN OF LIQUIDATION FOR
## GLOBAL GEOPHYSICAL SERVICES, LLC AND ITS AFFILIATED DEBTORS

Dated: July 20, 2016
        Corpus Christi, Texas

**BAKER BOTTS L.L.P.**
C. Luckey McDowell
Ian E. Roberts
Noah M. Schottenstein
2001 Ross Avenue
Dallas, Texas  75201-2980

Proposed Counsel for Debtors
 and Debtors in Possession

---

[1]   The Debtors in these Chapter 11 Cases are:  Global Geophysical Services, LLC (7582); Global Geophysical Services, Inc. (4281); Global Geophysical EAME, Inc. (2130); GGS International Holdings, Inc. (2420); Global Ambient Seismic, Inc. (2256); Autoseis, Inc. (5224); Autoseis Development Company (9066); and Global Geophysical (MCD), LLC (a disregarded entity for tax purposes).

**TABLE OF CONTENTS**

Page

ARTICLE I DEFINITIONS AND INTERPRETATIONS.................................................................1

ARTICLE II METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
        GENERAL PROVISIONS ...........................................................................13
    2.1    General Rules of Classification....................................................................13
    2.2    Settlement.....................................................................................................13
    2.3    Substantive Consolidation of Debtors for Purposes of Voting,
          Confirmation and Distribution. ...................................................................14
    2.4    Administrative, DIP Lender, Fee and Priority Tax Claims..........................14
    2.5    Deadline for Filing Fee Claims. ..................................................................14
    2.6    U.S. Trustee Fees. .......................................................................................14
    2.7    First Lien Agent Fees. .................................................................................15

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................................15

ARTICLE IV TREATMENT OF UNIMPAIRED CLASSES.......................................................15
    4.1    Administrative Claims. ................................................................................15
    4.2    Priority Tax Claims......................................................................................16
    4.3    Fee Claims....................................................................................................16
    4.4    Other Secured Claims – Class 3...................................................................16
    4.5    Other Priority Claims – Class 4. ..................................................................16
    4.6    Intercompany Claims – Class 6. ..................................................................17
    4.7    Intercompany Interests – Class 7. ...............................................................17

ARTICLE V TREATMENT OF IMPAIRED CLASSES............................................................17
    5.1    DIP Claims...................................................................................................17
    5.2    First Lien Claims – Class 1..........................................................................17
    5.3    Second Lien Claims – Class 2......................................................................17
    5.4    General Unsecured Claims – Class 5............................................................18
    5.5    Parent Interests – Class 8. ...........................................................................18

ARTICLE VI MEANS OF IMPLEMENTATION.......................................................................18
    6.1    Restructuring Transaction. ...........................................................................18
    6.2    Corporate Action. ........................................................................................19
    6.3    Merger of Debtors. ......................................................................................19
    6.4    Effectuating Documents and Further Transactions.......................................19
    6.5    Resignation of Officers and Directors of Debtors. ......................................20
    6.6    Withholding Taxes.......................................................................................20
    6.7    Exemption from Certain Transfer Taxes. ....................................................20
    6.8    Exemption from Securities Laws. ................................................................20
    6.9    Setoffs and Recoupments.............................................................................20
    6.10   Insurance Preservation and Proceeds. .........................................................21
    6.11   Shared Services Agreement. ........................................................................21

i

ARTICLE VII OPERATIONS OF LIQUIDATING COMPANIES; DUTIES OF THE PLAN
　　　　ADMINISTRATOR ................................................................21
　7.1　　Powers and Duties of Plan Administrator................................21
　7.2　　Compensation of Plan Administrator.....................................21
　7.3　　Liquidation Waterfall.....................................................22
　7.4　　Liquidating Companies.....................................................23
　7.5　　Succession of Plan Administrator. ......................................23
　7.6　　Liquidation of Estates and Distribution of Proceeds. ................23
　7.7　　Wind-down Reserve.........................................................24
　7.8　　Designation and Powers of Plan Administrator..........................24
　7.9　　Resignation, Death or Removal of Plan Administrator. .................26
　7.10　 Distributions to Holders of Claims Generally..........................26
　7.11　 Distributions to Holders of Second Lien Claims and General Unsecured
　　　　　Claims. ...................................................................26
　7.12　 Cash Held by the Liquidating Companies. ...............................28
　7.13　 Unclaimed Property. ......................................................28
　7.14　 No Recourse to Liquidating Companies or Plan Administrator. ..........29

ARTICLE VIII EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ...............29
　8.2　　Vesting of Causes of Action in NewCo. ..................................30
　8.3　　Release of Claims.........................................................30
　8.4　　Objections to Claims and Interests......................................35
　8.5　　Amendments to Claims. ....................................................35
　8.6　　Estimation of Claims. ....................................................35

ARTICLE IX EXECUTORY CONTRACTS ...........................................36
　9.1　　Executory Contracts and Unexpired Leases. .............................36
　9.2　　Cure........................................................................37

ARTICLE X CONDITIONS PRECEDENT TO  CONFIRMATION AND CONSUMMATION
　　　　OF THE PLAN .................................................................37
　10.1　 Conditions Precedent to Confirmation....................................37
　10.2　 Conditions to the Effective Date........................................37
　10.3　 Waiver of Conditions Precedent. ........................................38
　10.4　 Effect of Non-Occurrence of the Conditions to Consummation............38
　10.5　 Withdrawal of the Plan. .................................................39
　10.6　 Cramdown...................................................................39

ARTICLE XI ADMINISTRATIVE PROVISIONS......................................39
　11.1　 Retention of Jurisdiction...............................................39
　11.2　 Governing Law. ..........................................................42
　11.3　 Time.......................................................................42
　11.4　 Amendments................................................................42
　11.5　 Successors and Assigns...................................................42
　11.6　 Controlling Documents....................................................43
　11.7　 Termination of Professionals. ..........................................43
　11.8　 Notices. .................................................................43

11.9     Reservation of Rights...............................................................................................1

## EXHIBITS

EXHIBITS TO BE FILED IN THE PLAN SUPPLEMENT

| | |
|---|---|
| Exhibit 1 | Liquidating Companies Exit Credit Agreement |
| Exhibit 2 | Shared Services Agreement |
| Exhibit 3 | Plan Administrator Agreement |
| Exhibit 4 | Schedule of Assumed Contracts |
| Exhibit 5 | Schedule of Retained Causes of Action |
| Exhibit 6 | Amended LLC Agreement of Post-Effective Date Holdings |

# ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

### A.   Definitions.

The capitalized terms set forth below shall have the following meanings:

**1.1   Administrative Claim** means a Claim (other than a Fee Claim, a claim for payment of U.S. Trustee Fees or a DIP Claim) for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services rendered).

**1.2   Allowed _____ Claim** means a Claim that is Allowed in the specified Class.  For example, an Allowed Class 1 Claim or Allowed First Lien Claim is an Allowed Claim in the First Lien Claims Class designated herein as Class 1.

**1.3   Allowed** means, with respect to any Claim or Interest that is:  (a) not Disputed; and (b) (i) is scheduled by the Debtors in their schedules of assets and liabilities pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed and for which no proof of claim has been filed, (ii) proof of which has been timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Bankruptcy Court, or late filed with leave of the Bankruptcy Court, and as to which the period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court for objecting to such Claim or Interest has expired without any objection having been filed, (iii) allowed by an agreement between the holder of such Claim or Interest and the Debtors or Liquidating Companies, or (iv) otherwise allowed by a Final Order or pursuant to the Plan.  An Allowed Claim:  (a) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (b) shall be net of any setoff amount that may be asserted by any Debtor against the holder of such Claim, which shall be deemed to have been setoff in accordance with the provisions of the Plan.

**1.4   Ambient** means Global Ambient Seismic, Inc.

**1.5   Ambient Net Proceeds** means the net proceeds realized by NewCo from a sale or other disposition of the business or assets of Ambient on or after the Effective Date.

**1.6   Assumed First Lien Debt** means $6,000,000 in First Lien Claims, accruing interest at a rate of 5.0% annually, paid in kind monthly, which shall be assumed by the Liquidating Companies, subject to the terms of the Liquidating Companies Exit Credit Agreement.

**1.7   Assumed Net Recoveries** means $8,409,000, representing the projected recoveries with respect to the sale or other disposition of the Liquidating Company Assets, net of

(a) the amount of the Wind-down Reserve and (b) interest, fees and other costs related to the Liquidating Companies Exit Credit Agreement.

**1.8** **Autoseis** means Autoseis, Inc. and Autoseis Development Company

**1.9** **Autoseis Net Proceeds** means the net proceeds realized by NewCo from a sale or other disposition of the business or assets of Autoseis on or after the Effective Date.

**1.10** **Ballot** means the ballot distributed to holders of First Lien Claims and Second Lien Claims eligible to vote on the Plan, on which ballot such holder may, inter alia, vote for or against the Plan.

**1.11** **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

**1.12** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.13** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Texas), as applicable to the Chapter 11 Cases.

**1.14** **Bar Date** means any deadline for filing proof of a Claim that arose on or prior to the Petition Date as established by an order of the Bankruptcy Court or the Plan.

**1.15** **Brazilian Receivables** means any intercompany claims and receivables due to any Debtor by the Brazilian Sub, including any proceeds therefrom. The Brazilian Receivables shall constitute NewCo Assets.

**1.16** **Brazilian Sub** means Global Serviços Geofísicos Ltda.

**1.17** **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.18** **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items in the legal tender of the United States of America.

**1.19** **Causes of Action** means any claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and

2

defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

        **1.20**    **Chapter 11 Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court.

        **1.21**    **Claim** means a claim against a Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

        **1.22**    **Class** means a group of Claims or Interests classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code, and as set forth in Article III of the Plan.

        **1.23**    **Confirmation Date** means the date the Bankruptcy Court enters the Confirmation Order on its docket.

        **1.24**    **Confirmation Hearing** means the hearing to adjudicate confirmation of the Plan.

        **1.25**    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement pursuant to sections 1125 and 1126(b) of the Bankruptcy Code, which shall be in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders and which shall include a finding of good faith with respect to the Released Parties within the meaning of 1125(e) of the Bankruptcy Code.

        **1.26**    **Cure Amount** shall have the meaning ascribed to such term in Section 9.2(a) of the Plan.

        **1.27**    **Cure Dispute** shall have the meaning ascribed to such term in Section 9.2(b) of the Plan.

        **1.28**    **Debtors** means:  Global Geophysical Services, LLC; Global Geophysical Services, Inc.; Global Geophysical EAME, Inc.; GGS International Holdings, Inc.; Global Ambient Seismic, Inc.; Autoseis, Inc.; Autoseis Development Company; and Global Geophysical (MCD), LLC.

        **1.29**    **DIP Agent** means Wilmington Savings Fund Society, FSB in its capacity as the administrative agent under the DIP Facility.

        **1.30**    **DIP Claim** means a Claim of a DIP Lender in respect of the obligations of the Debtors arising under the DIP Facility.

**1.31    DIP Facility** means the $2.0 million senior secured superpriority debtor-in-possession credit facility provided to the Debtors pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement, dated as of August [•], 2016, among GGS Inc., as borrower, and each of the other Debtors, as guarantors, each of the DIP Lenders, and the DIP Agent, as the same may be modified and amended from time to time, in accordance with the terms thereof.

**1.32    DIP Lenders** means the lenders that are party to the DIP Facility.

**1.33    DIP Order** means that certain order or orders of the Bankruptcy Court authorizing and approving the DIP Facility, and approving the Debtors' use of cash claimed as collateral.

**1.34    Disallowed** means a finding of the Bankruptcy Court in a Final Order or provision of the Plan providing that a Claim shall not be an Allowed Claim.

**1.35    Disclosure Statement** means the Disclosure Statement that relates to the Plan and is approved by the Bankruptcy Court pursuant to sections 1125 and 1126(b) of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein and all supplements thereto).

**1.36    Disputed** means, with respect to a Claim or Interest, that portion (including, when appropriate, the whole) of such Claim or Interest that: (a) if the Debtors are required by the Bankruptcy Court to file schedules of assets and liabilities, (i) has not been scheduled by the Debtors or has been scheduled in a lesser amount or priority than the amount or priority asserted by the holder of such Claim or Interest, or (ii) has been scheduled as contingent, unliquidated or disputed and for which no proof of claim has been timely filed; (b) is the subject of an objection or request for estimation filed in the Bankruptcy Court which has not been withdrawn or overruled by a Final Order; and/or (c) is otherwise disputed by any of the Debtors or Liquidating Companies in accordance with applicable law or written notice to the Claim holder, which dispute has not been withdrawn, resolved, or overruled by final, non-appealable order of a court of competent jurisdiction.

**1.37    Disputed Claims Reserve** shall have the meaning ascribed to such term in Section 7.11(b) hereof

**1.38    Distributable Cash** means all Cash held by the Liquidating Companies, net of amounts necessary to fund the Wind-down Reserve, repayment of the Liquidating Companies Working Capital Facility, and Distributions on account of Administrative Claims, Fee Claims, U.S. Trustee Fees, Priority Tax Claims, First Lien Agent Fees, Other Priority Claims, Other Secured Claims.  Distributable Cash shall be available for distribution to holders of Assumed First Lien Debt, Second Lien Claims and General Unsecured Claims under Section 7.3 of the Plan.

**1.39    Distribution** means the distribution in accordance with the terms of the Plan of:  (a) Cash, (b) NewCo Common Stock, or (c) rights under the Liquidating Companies Exit Credit Agreement, in each case, if any, and as the case may be.

**1.40    Distribution Address** means the address set forth in the relevant proof of claim.  If no proof of claim is filed in respect to a particular Claim, then the address set forth in the Debtors' books and records or in any applicable register maintained by the First Lien Agent or Second Lien Agent.

**1.41    Distribution Agent** means any stock transfer agents, agents contractually authorized and/or obligated to make Distributions to certain claimants and similar intermediaries and agents participating in making or conveying Distributions as required by the Plan, which may include any Liquidating Company or the Plan Administrator.

**1.42    Effective Date** means a Business Day, selected by the Debtors, which is after the entry of the Confirmation Order, on which all conditions to the Effective Date set forth in Section 10.2 of the Plan have been satisfied or waived.

**1.43    Estates** means the estates created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.44    Estimated Fee Claims** shall have the meaning ascribed to such term in Section 4.3 of the Plan.

**1.45    Estimation Order** means an order or orders of the Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.46    Fee Claim** means a Claim by a Professional Person (other than an ordinary course professional retained pursuant to an order of the Bankruptcy Court) for compensation or reimbursement pursuant to section 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases.

**1.47    Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.48** **Final Waterfall Distribution** shall have the meaning set forth in Section 7.11(c)(v) of the Plan.

**1.49** **First Lien Agent** means Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent under the First Lien Credit Agreement.

**1.50** **First Lien Agent Fees** means the reasonable and documented compensation, fees, expenses, disbursements, and indemnity claims arising under the First Lien Credit Agreement, including attorneys' and agents' fees, expenses, and disbursements, incurred under the First Lien Credit Agreement by the First Lien Agent, whether prior to or after the Petition Date.

**1.51** **First Lien Credit Agreement** means that certain First Lien Credit Agreement, dated as of February 9, 2015, by and among Holdings, GGS Inc., as borrower, the guarantors thereto, the lenders party thereto, and the First Lien Agent, together with the Intercreditor Agreement, any guaranties, and other collateral or ancillary documents (as amended, modified or supplemented).

**1.52** **First Lien Facility** means the term loan and revolving credit facility provided to the Debtors pursuant to the First Lien Credit Agreement.

**1.53** **First Lien Claim** means any Claim derived from or based upon the First Lien Facility.

**1.54** **First Lien Lenders** means those several banks and other financial institutions from time to time lenders under the First Lien Credit Agreement.

**1.55** **General Unsecured Claim** means any Claim that is not: (a) an Administrative Claim, (b) an Other Priority Claim, (c) a Priority Tax Claim, (d) a claim for U.S. Trustee Fees, (e) an Other Secured Claim, (f) a DIP Claim, (g) a First Lien Claim, (h) a Fee Claim, (i) a Second Lien Claim, (j) an Intercompany Claim, or (k) a Subordinated Securities Claim.

**1.56** **GGS Inc.** means Global Geophysical Services, Inc., a Delaware corporation.

**1.57** **Holdings** means Global Geophysical Services, LLC, a Delaware limited liability company.

**1.58** **Impaired** means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.59** **Initial Waterfall Distribution Date** shall have the meaning ascribed thereto in Section 7.11(c)(i).

**1.60**   **Intercompany Claim** means any Claim (including an Administrative Claim), cause of action, or remedy held by a Debtor against another Debtor.

**1.61**   **Intercompany Interest** means an Interest, other than an Parent Interest, in a Debtor held by another Debtor.

**1.62**   **Intercreditor Agreement** means that certain Intercreditor Agreement, dated as of February 9, 2015, by and between the First Lien Agent, the Second Lien Agent and acknowledged and agreed to by the Debtors.

**1.63**   **Interest** means any equity interest in any Debtor, including an equity security within the meaning of section 101(16) of the Bankruptcy Code or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**1.64**   **Liquidating Companies Exit Credit Agreement** means a new senior secured first lien credit agreement by and among Post-Effective Date Holdings as the borrower thereunder, the Liquidating Companies as guarantors, and the lenders from time to time party thereto, which shall provide for (a) the first-out Liquidating Companies Working Capital Facility of up to $3,750,000, and (b) a last-out term loan in the amount of the Assumed First Lien Debt. The Claims arising under the Liquidating Companies Exit Credit Agreement shall be secured by a first priority lien on the assets of the Liquidating Companies.

**1.65**   **Liquidating Companies Working Capital Facility** means a new money committed budget-based working capital facility of up to $3,750,000 provided to the Liquidating Companies on the Effective Date pursuant to the terms of the Liquidating Companies Exit Credit Agreement.  Upon the closing of the Liquidating Companies Exit Credit Agreement, a payment in kind fee of $37,500 shall be added to the amount owed by the Liquidating Companies under the Liquidating Companies Working Capital Facility. The amount owed by the Liquidating Companies pursuant to the Liquidating Companies Working Capital Facility shall accrue interest at a rate of 15% annually, paid in kind monthly.  Pursuant to the Liquidating Companies Exit Credit Agreement, an unused line fee shall apply to the undrawn portion of the Liquidating Companies Working Capital Facility.  The Liquidating Companies Working Capital Facility shall mature at the earlier of (i) two (2) years following the Effective Date, or (ii) one hundred twenty (120) days after the Liquidating Companies have converted all the Liquidating Company Assets into Cash.

**1.66**   **Liquidating Company IP** means the intellectual property owned by the Debtors which does not specifically relate to the NewCo Assets.

**1.67**   **Liquidating Company** means a Debtor on and after the Effective Date.

**1.68**   **Liquidating Company Assets** means, other than the (a) NewCo Assets and (b) any Claims or Causes of Action released pursuant to this Plan, all legal or equitable interests of each of the Debtors and their respective Estates in any real or personal property or assets of any kind or nature, including without limitation, the Intercompany Interests, the Intercompany Claims, all equity in domestic and foreign non-Debtor subsidiaries, all real estate,

buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, net operating losses, proceeds of insurance, reserves, deposits, equity interests, contractual rights, intellectual property rights, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

   **1.69** **NewCo** means a newly formed Delaware entity established on or prior to the Effective Date to hold and operate the NewCo Assets.

   **1.70** **NewCo Assets** means (a) all of the Debtors' owned, leased, or sub-leased real property, furniture and fixtures located in United States, (b) at the First Lien Lenders' discretion, either the equity interests of the legal entity that owns the Debtors' multi-client data library, or the assets thereof, (c) all intellectual property of the Debtors, other than the Liquidating Company IP, (d) substantially all of the assets of Autoseis and Ambient, (e) any and all claims and Causes of Action of the Debtors, including claims arising under chapter 5 of the Bankruptcy Code, (d) the Brazilian Receivables, (e) all contracts and leases identified on the Schedule of Assumed Contracts and Leases as being designated for assumption and assignment to NewCo, and (f) with respect to each of the forgoing, all related assets, rights, contracts and the proceeds therefrom.

   **1.71** **NewCo Common Stock** means the common stock of NewCo issued on the Effective Date and distributed in the manner provided in the Plan.

   **1.72** **Opt-Out Deadline** means the date that is twenty-one days following the entry of the Confirmation Order.

   **1.73** **Opt-Out Notice** means a notice returned to the Solicitation Agent in accordance with the terms of the voting instructions or Confirmation Order, as applicable, by a holder of Claims or Interests indicating that such party opts out of the release provisions set forth in Section 8.3 of the Plan.

   **1.74** **Other Priority Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Fee Claim; (d) a DIP Claim; or (e) any Claim for "adequate protection" of the security interests of the First Lien Lenders or the Second Lien Lenders authorized pursuant to the terms of the DIP Order.

   **1.75** **Other Secured Claim** means a Secured Claim other than a DIP Claim, a First Lien Claim, a Second Lien Claim or an Intercompany Claim.

   **1.76** **Parent Interests** means all existing Interests in Holdings, including the warrants issued pursuant to the Warrant Agreement between Holdings, Computershare Inc. and Computershare Trust Company, N.A., as warrant agent, dated as of February 9, 2015, and any Subordinated Securities Claims related to such Interests.

**1.77    Periodic Waterfall Distribution Date** means, subject to Section 7.11(c)(iv), the first Business Day of each calendar quarter following the Initial Waterfall Distribution Date.

**1.78    Person** means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, including, for the avoidance of doubt, Interest holders, current or former employees of the Debtors, or any other entity.

**1.79    Petition Date** means the date on which the Debtors file petitions for relief under the Bankruptcy Code to pursue the transactions contemplated hereby.

**1.80    Plan** means this Joint Prepackaged Plan of Reorganization, dated as of the date set forth on the first page hereof, for the Debtors, together with any amendments or modifications hereto as the Debtors may file hereafter (such amendments or modifications only being effective if approved by order of the Bankruptcy Court), which shall be in form and substance satisfactory to the Debtors and the Required First Lien Lenders.

**1.81    Plan Administrator** means Sean Gore, or another Person identified in the Confirmation Order, or other filing with the Bankruptcy Court, and retained as of the Effective Date pursuant to the Plan Administrator Agreement, as the employee or fiduciary responsible for implementing the applicable provisions of the Plan relating to the liquidation of the Liquidating Company Assets.

**1.82    Plan Administrator Agreement** means an agreement, to be entered into as of the Effective Date, by the Liquidating Companies and the Plan Administrator, which sets forth, among other things, the duties, indemnification and compensation of the Plan Administrator.

**1.83    Plan Documents** means the Liquidating Companies Exit Credit Agreement, the Schedule of Assumed Contracts and Leases and the Shared Services Agreement and the Plan Administrator Agreement each in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders, and each to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

**1.84    Plan Supplement** means the supplemental appendix to the Plan, which contains, among other things, substantially final forms or executed copies, as the case may be, of the Plan Documents.

**1.85    Post-Effective Date Holdings** means Holdings on and after the Effective Date.

**1.86    Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.87    Pro Rata** means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of the Claims or Interests in such Class, excluding

Disallowed Claims or Disallowed Interests; <u>provided that</u>, "Pro Rata" with respect to Second Lien Claims and General Unsecured Claims shall mean the proportion each such Claim holds to the aggregate amount of Second Lien Claims and General Unsecure Claims.

 **1.88 Professional Person** means a Person retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to section 327, 328, 330 or 1103 of the Bankruptcy Code.

 **1.89 Reinstated or Reinstatement** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with section 1124 of the Bankruptcy Code, or (b) if applicable under section 1124 of the Bankruptcy Code:  (i) curing all prepetition and postpetition defaults other than defaults relating to the insolvency or financial condition of the Debtor or its status as a debtor under the Bankruptcy Code; (ii) reinstating the maturity date of the Claim; (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration; and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

 **1.90 Released Parties** means each of, and solely in its capacity as such:  (a) the Debtors; (b) the First Lien Agent; (c) the First Lien Lenders; (d) all Second Lien Lenders that do not submit Opt-Out Notices by the Voting Deadline; (e) the Second Lien Agent; (f) the DIP Lenders; (g) the DIP Agent; (h) the holders of General Unsecured Claims that do not submit Opt-Out Notices by the Opt-Out Deadline; (i) holders of Interests that do not submit Opt-Out Notices by the Opt-Out Deadline;   and (j) with respect to each of the foregoing entities in clauses (a) through (i), such entity's current affiliates, subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners and other professionals.

 **1.91 Releasing Party** means each of, and solely in its capacity as such, (a) the First Lien Agent; (b) the First Lien Lenders; (c) all Second Lien Lenders that do not submit Opt-Out Notices by the Voting Deadline; (d) the DIP Lenders; (e) the DIP Agent; (f) the holders of Unimpaired Claims; (g) the holders of General Unsecured Claims that do not submit Opt-Out Notices by the Opt-Out Deadline; (h) holders of Interests that do not submit Opt-Out Notices by the Opt-Out Deadline; and (i) with respect to the foregoing entities in clauses (a) through (h), such entity's current affiliates, subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners and other professionals.

 **1.92 Required First Lien Lenders** means First Lien Lenders holding a majority in dollar amount of the First Lien Claims.

 **1.93 Restructuring Transaction** shall have the meaning ascribed to such term in Section 6.1 of the Plan.

 **1.94 Schedule of Assumed Contracts and Leases** means a schedule of the contracts and leases to be assumed by the Liquidating Companies or assumed and assigned to

NewCo pursuant to section 365 of the Bankruptcy Code and Section 8.1 of the Plan hereof, which shall (a) be filed by the Debtors at least ten (10) calendar days prior to the start of the Confirmation Hearing, as such schedule may be amended from time to time on or before the Confirmation Date, (b) set forth whether such contract or lease shall be assumed by the applicable Liquidating Company, or, if applicable, assumed and assigned to NewCo, and (c) be reasonably acceptable to the Required First Lien Lenders.

      **1.95**     **Second Lien Agent** means Wilmington Trust, National Association.

      **1.96**     **Second Lien Claim** means any Claim derived from or based upon the Second Lien Facility.

      **1.97**     **Second Lien Credit Agreement** means that certain Second Lien Credit Agreement, dated as of February 9, 2015, by and among GGS Inc., Holdings, the other guarantors party thereto, the lenders party thereto and Wilmington Trust, National Association, as administrative agent and collateral agent, as the same may have been amended, restated, replaced, supplemented or otherwise modified from time to time.

      **1.98**     **Second Lien Facility** means the term loan facility provided to the Debtors pursuant to the Second Lien Credit Agreement.

      **1.99**     **Second Lien Lenders** means the lenders under the Second Lien Credit Agreement.

      **1.100**     **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code and section 1111 of the Bankruptcy Code, as applicable, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtor in and to property of such Debtor's Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date.  The defined term Secured Claim includes any Claim that is a secured Claim pursuant to sections 506 and 553 of the Bankruptcy Code.

      **1.101**     **Securities Act** means the United States Securities Act of 1933, as amended.

      **1.102**     **Shared Services Agreement** means an agreement to be entered into by and among NewCo and the Liquidating Companies with respect to the sharing of expenses among such entities.

      **1.103**     **Solicitation Agent** means PrimeClerk, LLC, the Debtors' solicitation, notice and claims agent.

      **1.104**     **Subordinated Securities Claim** means a Claim of the type described in, and subject to subordination pursuant to section 510(b) of the Bankruptcy Code, if any, which Claim is related to an Interest in a Debtor.

**1.105   Unclaimed Property** means any Cash or other property unclaimed on or after the Effective Date or date on which a Distribution would have been made in respect of the relevant Allowed Claim.   Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby), not mailed or delivered because no Distribution Address to mail or deliver such property was available.

**1.106   United States Trustee** means the Office of the United States Trustee for the Southern District of Texas.

**1.107   Unimpaired** means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

**1.108   U.S. Trustee Fees** means fees arising under 28 U.S.C. § 1930(a)(6) and accrued interest thereon arising under 31 U.S.C. § 3717.

**1.109   Voting Deadline** means August 1, 2016, or such other date as provided in the voting instructions accompanying the Ballots.

**1.110   Waterfall** means the distribution of Distributable Cash (including proceeds of the sale of the Liquidating Company Assets) pursuant to Sections 7.3 and 7.11 of the Plan.

**1.111   Waterfall Claims** means General Unsecured Claims, Second Lien Claims and rights to payment under the Liquidating Companies Exit Credit Agreement.

**1.112   Wind-down Budget** means the budget, which shall be subject to the approval of the Required First Lien Lenders, governing the Plan Administrator's use of funds from the Wind-down Reserve.  A preliminary draft of the Wind-down Budget is attached to the Disclosure Statement as Exhibit C.

**1.113   Wind-down Reserve** means the fund to be established on the Effective Date, and funded in part through the Liquidating Companies Working Capital Facility, in the aggregate amount of $5,271,000, representing the amount necessary to fund the winding up of the affairs of the Debtors and the dissolution of the Liquidating Companies, including amounts set aside with respect to the preparation of the final tax return for the Liquidating Companies and payment of any tax liabilities with respect thereto.  The amount of the Wind-down Reserve may be adjusted, following the Effective Date, by agreement between NewCo and the Liquidating Companies.

**B.      Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan.   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.   Any capitalized term used herein that

is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. Except for the rules of construction contained in sections 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. To the extent there is an inconsistency between any of the provisions of the Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan Documents shall control.

### C. Appendices and Plan Documents.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS
## AND INTERESTS AND GENERAL PROVISIONS

### 2.1 General Rules of Classification.

Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

### 2.2 Settlement.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the

range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

**2.3**      **Substantive Consolidation of Debtors for**
**Purposes of Voting, Confirmation and Distribution.**

(a)      This Plan provides for substantive consolidation of the Debtors' Estates for purposes of voting, confirmation, and making distributions to the holders of Allowed Claims under this Plan.  On the Effective Date, and for purposes of voting, confirmation, and making distributions to the holders of Allowed Claims under this Plan: (i) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be disregarded; (ii) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (iii) all guarantees by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases.  Except as set forth in this Section 2.3 and Section 6.3 of the Plan, such substantive consolidation shall not affect (i) the legal and corporate structure of the Liquidating Companies, or (ii) any obligations under any leases or contracts assumed in this Plan or otherwise after the Petition Date.

(b)      Notwithstanding the substantive consolidation of the Estates for the purposes set forth in Section 2.3(a) of the Plan, each Liquidating Company shall pay U.S. Trustee Fees on all disbursements as set forth in Section 2.6 of the Plan.

**2.4**      **Administrative, DIP Lender, Fee and Priority Tax Claims.**

Administrative Claims, DIP Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article III in accordance with section 1123(a)(1) of the Bankruptcy Code.

**2.5**      **Deadline for Filing Fee Claims.**

All proofs or applications for payment of Fee Claims must be filed with the Bankruptcy Court by the date that is forty-five (45) days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter).  **Any Person that fails to file such a proof of Claim or application on or before such date shall be forever barred from asserting such Claim against the Debtors, the Liquidating Companies or their property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.**

Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date or such other date as established by the Bankruptcy Court.

**2.6**      **U.S. Trustee Fees.**

On the Effective Date or as soon as practicable thereafter, the Debtors or Plan Administrator shall pay all U.S. Trustee Fees that are then due.  Any U.S. Trustee Fees due

14

thereafter shall be paid by the Liquidating Companies in the ordinary course until the earlier of the entry of a final decree closing the applicable Chapter 11 Case, or a Bankruptcy Court order converting or dismissing the applicable Chapter 11 Case.  Any deadline for filing Administrative Claims or Fee Claims shall not apply to U.S. Trustee Fees.

### 2.7     First Lien Agent Fees.

On the Effective Date, the First Lien Agent Fees shall be paid in cash, without the need for the First Lien Agent to file a fee application with the Bankruptcy Court.  To the extent that the Debtors object to the reasonableness of any portion of First Lien Agent Fees, the Debtors shall not be required to pay such Disputed portion until either such objection is resolved or a further order of the Bankruptcy Court is entered providing for payment of such Disputed portion.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims and Interests under the Plan and specifies which Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject this Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | First Lien Claims | Yes | Yes |
| Class 2 | Second Lien Claims | Yes | Yes |
| Class 3 | Other Secured Claims | No | No (Deemed to accept) |
| Class 4 | Other Priority Claims | No | No (Deemed to accept) |
| Class 5 | General Unsecured Claims | Yes | No (Deemed to reject) |
| Class 6 | Intercompany Claims | No | No (Deemed to accept) |
| Class 7 | Intercompany Interests | No | No (Deemed to accept) |
| Class 8 | Parent Interests | Yes | No (Deemed to reject) |

Each Allowed Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

## ARTICLE IV

## TREATMENT OF UNIMPAIRED CLASSES

### 4.1     Administrative Claims.

Each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid Allowed amount of such Claim in Cash on or as soon as reasonably practicable after the Effective Date.  Notwithstanding the immediately preceding sentence, Allowed Administrative Claims incurred in the ordinary course of business and on ordinary business terms unrelated to

the administration of the Chapter 11 Cases (such as Allowed trade and vendor Claims) shall be paid, at the Debtors' or Liquidating Companies' option, in accordance with ordinary business terms for payment of such Claims. Notwithstanding the foregoing, the holder of an Allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by the claimant and the Debtors or Liquidating Companies.

### 4.2     Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### 4.3     Fee Claims.

A Fee Claim in respect of which a final fee application has been properly filed and served pursuant to Section 2.5 of the Plan shall be payable by the Liquidating Companies to the extent approved by a Final Order of the Bankruptcy Court. Prior to the Effective Date, each holder of a Fee Claim shall submit to the Debtors estimates of any Fee Claims that have accrued prior to the Effective Date that have not yet been paid (collectively, the "**Estimated Fee Claims**"). On the Effective Date, the Liquidating Companies shall reserve and hold in an account Cash in an amount equal to the aggregate amount of each unpaid Estimated Fee Claim as of the Effective Date (minus any unapplied retainers). Such Cash shall be disbursed solely to the holders of Allowed Fee Claims as soon as reasonably practicable after a Fee Claim becomes an Allowed Claim. Upon payment of some, but not all, Allowed Fee Claims, Cash remaining in such account shall be reserved until all other Allowed Fee Claims have been paid in full or all remaining Fee Claims have been Disallowed or not otherwise permitted, at which time any remaining Cash held in reserve with respect to the Estimated Fee Claims shall be used to repay any amounts owing under the Liquidating Companies Exit Credit Agreement or, if no such amounts are owing, become Distributable Cash.

### 4.4     Other Secured Claims – Class 3.

Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code, each holder of an Allowed Other Secured Claim shall receive, at the Debtors' option, with the consent of the Required First Lien Lenders: (a) the Reinstatement of such Claim against the applicable Liquidating Company; (b) payment in full in Cash of the Allowed amount of such Other Secured Claim by the Liquidating Companies; (c) the delivery of the collateral securing any such Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (d) such other treatment rendering such Other Secured Claim Unimpaired; or (e) such other, less favorable treatment as may be agreed between such holder and the Debtors or Liquidating Companies, with the consent of the Required First Lien Lenders.

### 4.5     Other Priority Claims – Class 4.

In satisfaction of each Allowed Other Priority Claim, each holder thereof shall receive the following, at the option of the Debtors, with the consent of the Required First Lien

Lenders: (a) payment in full in Cash; (b) other treatment rendering such Other Priority Claim Unimpaired; or (c) such other, less favorable treatment as may be agreed between such holder and the Debtors, with the consent of the Required First Lien Lenders.

### 4.6      Intercompany Claims – Class 6.

Each Intercompany Claim shall either be Reinstated or cancelled in the Debtors' (or Liquidating Companies') discretion, with the consent of the Required First Lien Lenders.

### 4.7      Intercompany Interests – Class 7.

Intercompany Interests shall be Reinstated.

## ARTICLE V

## TREATMENT OF IMPAIRED CLASSES

### 5.1      DIP Claims.

The DIP Claims shall be deemed to be Allowed Claims under the Plan.  On the Effective Date, all of the Debtors' obligations with respect to the DIP Claims shall be assumed by NewCo.

### 5.2      First Lien Claims – Class 1.

The First Lien Claims shall be Allowed in an aggregate amount equal to $85,104,644.  In full and final satisfaction of the Allowed First Lien Claims, each holder thereof shall receive its Pro Rata Share of:

    (a)    the NewCo Common Stock;

    (b)    the rights of lenders with respect to any portion of the Debtors' obligations with respect to the First Lien Claims that is assumed by Newco; and

    (c)    the rights of lenders under the Liquidating Companies Exit Credit Agreement with respect to the Assumed First Lien Debt.

### 5.3      Second Lien Claims – Class 2.

The Second Lien Claims shall be deemed Allowed Claims in the amount of $40,445,999.  Each holder of an Allowed Second Lien Claim shall receive, in full and final satisfaction of its Allowed Second Lien Claims, its Pro Rata share of Distributable Cash to be distributed by the Liquidating Companies from time to time in accordance with the Waterfall.

### 5.4 General Unsecured Claims – Class 5.

Each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its Allowed General Unsecured Claim, its Pro Rata share of Distributable Cash to be distributed by the Liquidating Companies from time to time in accordance with the Waterfall.

### 5.5 Parent Interests – Class 8.

On the Effective Date, all Parent Interests shall be cancelled, and holders of Parent Interests shall receive no distribution on account of such Interests.

## ARTICLE VI

## MEANS OF IMPLEMENTATION

### 6.1 Restructuring Transaction.

The Distributions provided for under the Plan shall be effectuated pursuant to the following transactions (collectively, the "**Restructuring Transaction**"):

(a)     As of the Effective Date, all Parent Interests shall be deemed cancelled, and Post-Effective Date Holdings shall issue ten (10) new membership interests, all of which shall be issued to the Plan Administrator in exchange for one dollar ($1.00), and the Plan Administrator shall be appointed as the sole officer and sole member of Post-Effective Date Holdings;

(b)     on or prior to the Effective Date, NewCo shall be incorporated under the laws of Delaware;

(c)     as of the Effective Date, NewCo shall authorize and issue one class of equity securities consisting of the NewCo Common Stock, which shall be distributed on the Effective Date in accordance with Section 5.2 of the Plan;

(d)     NewCo and the Liquidating Companies shall enter into the Shared Services Agreement as of the Effective Date;

(e)     the Plan Administrator and the Liquidating Companies shall enter the Plan Administrator Agreement as of the Effective Date;

(f)     pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Liquidating Companies Exit Credit Agreement, the other Plan Documents or the Confirmation Order (or, with respect to NewCo, any portion of the obligations constituting First Lien Claims that are assumed by NewCo), on the Effective Date: (i) the Liquidating Company Assets shall vest in the Liquidating Companies free and clear of all Claims, liens, encumbrances, charges, and other interests; and (ii) the NewCo Assets shall vest in NewCo, free and clear of all Claims, liens, encumbrances, charges, and other interests;

18

(g)    the Liquidating Companies, and the agent and lenders thereunder, shall enter into the Liquidating Companies Working Capital Facility;

(h)    the Debtors shall consummate the Plan by (i) making Distributions of the NewCo Common Stock and Cash, and (ii) causing the Liquidating Companies to enter into the Liquidating Companies Exit Credit Agreement; and

(i)    the releases provided for herein, which are an essential element of the Restructuring Transaction, shall become effective.

### 6.2    Corporate Action.

The Confirmation Order shall provide that it establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of NewCo, the Debtors and the Liquidating Companies to undertake any and all acts and actions required to implement or contemplated by the Plan, including without limitation, the specific acts or actions or documents or instruments identified in this Section 6.2, and any subsequent merger or dissolution of the Liquidating Companies, and no board, member or shareholder vote shall be required with respect thereto.

### 6.3    Merger of Debtors.

Upon the Effective Date, (a) the members of the board of director or managers, as the case may be, of each of the Debtors other than Holdings shall be deemed to have resigned and (b) each of the Debtors other than Holdings shall be merged with and into Post-Effective Date Holdings without the necessity of any other or further action to be taken by or on behalf of the Debtors; provided, however, that each of the Debtors shall be authorized to execute and file all documents to the extent necessary to effectuate or record such merger and dissolution with the appropriate authorities in accordance with applicable non-bankruptcy law (if any); and provided further, however that the Chapter 11 Cases of the Debtors other than Holdings shall be closed upon the entry of a separate order of the Court, upon motion by the Debtors, the Liquidating Companies or the Plan Administrator.  On the Effective Date, the Plan Administrator shall serve as the sole shareholder, sole officer and sole director of the Liquidating Companies. The Plan Administrator shall be responsible for the daily operations of the Liquidating Companies, subject to the terms and conditions of the Plan Administration Agreement and other Plan Documents.

### 6.4    Effectuating Documents and Further Transactions.

NewCo, the Debtors and the Liquidating Companies shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

**6.5**      **Resignation of Officers and Directors of Debtors.**

As of the Effective Date, the boards of directors of the Liquidating Companies shall each consist solely of the Plan Administrator, unless otherwise set forth in the Plan Supplement.  The officers members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall be deemed to have resigned as of the Effective Date, and shall have no continuing obligations to the Liquidating Companies on or after the Effective Date.

**6.6**      **Withholding Taxes.**

Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

**6.7**      **Exemption from Certain Transfer Taxes.**

To the fullest extent permitted by applicable law, all sale transactions and other transfers, including, without limitation, the transfer of the NewCo Assets to NewCo, consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of any owned property pursuant to section 363(b) or 1123(b)(4) of the Bankruptcy Code, any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and the creation, modification, consolidation or recording of any mortgage pursuant to the terms of the Plan, Liquidating Companies Exit Credit Agreement or ancillary documents, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  The Confirmation Order shall specifically authorize and order each respective clerk, recorder or other governmental official charged with accepting, filing or recording any instrument of conveyance or transfer to file or record any such document without imposition or collection of any such tax or charge.

**6.8**      **Exemption from Securities Laws.**

The issuance of NewCo Common Stock and new interests in Post-Effective Date Holdings shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

**6.9**      **Setoffs and Recoupments.**

Each Liquidating Company, or such entity's designee as instructed by such Liquidating Company, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any and all claims, rights and causes of action that a Liquidating Company holds following the Effective Date against the

20

holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Liquidating Company or its successor (including NewCo) of any and all claims, rights and causes of action that a Liquidating Company or its successor (including NewCo) may possess against such holder.

### 6.10    Insurance Preservation and Proceeds.

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any insurance policies that may cover claims against the Debtors or any other Person.

### 6.11    Shared Services Agreement.

On the Effective Date, NewCo and the Liquidating Companies shall enter into the Shared Services Agreement, substantially in the form set forth in the Plan Supplement.  The Shared Services Agreement shall set forth the allocations of costs and expenses related to certain services and assets utilized by both NewCo and the Liquidating Companies, which may include, but are not limited to (i) combined office space, (ii) administrative support, (iii) human resources, including the salary and benefits expense of the Plan Administrator to the extent that the Plan Administrator also manages NewCo, (iv) intellectual property, information technology and related support services, (v) accounting, (vi) finance, (vii) legal and (viii) procurement services.

## ARTICLE VII

## OPERATIONS OF LIQUIDATING COMPANIES; DUTIES OF THE PLAN ADMINISTRATOR

### 7.1    Powers and Duties of Plan Administrator.

Subject to the terms and provisions of the Plan Administrator Agreement, the Plan Administrator shall have all duties, powers, and standing and authority necessary to implement the Plan and to administer and liquidate the Liquidating Company Assets for the benefit of lenders under the Liquidating Companies Exit Credit Agreement and holders of Second Lien Claims and General Unsecured Claims, including, without limitation, entering into the Liquidating Companies Exit Credit Agreement (including related security documents), pledging or otherwise encumbering the assets of the Liquidating Companies in connection with the Liquidating Companies Exit Credit Agreement, reconciling claims filed in the Chapter 11 Cases, and winding up the Liquidating Companies.

### 7.2    Compensation of Plan Administrator.

The compensation of the Plan Administrator shall be as specified in the Plan Administrator Agreement.  Anticipated compensation terms for the Plan Administrator under the Plan Administrator Agreement include (i) an annual salary of $400,000, (ii) a bonus of up to $200,000 to be paid in accordance with the formula and schedule established in the Plan

Administrator Agreement, and (iii) incentive compensation bonuses of 2%-5% of the proceeds of certain specified assets.  The Plan Administrator shall also be entitled to reimbursement of reasonable expenses, as more fully described in the Plan Administrator Agreement.

### 7.3 Liquidation Waterfall.

Distributable Cash shall be distributed by the Liquidating Companies in the following manner:

(a)    First, after payment in full of the Liquidating Companies Working Capital Facility and permanent reduction of the entire commitment thereunder, then

(i) 66.66% of proceeds from the sale of the Liquidating Company Assets shall be distributed to lenders under the Liquidating Companies Exit Credit Agreement for so long as any amounts under the Liquidating Companies Exit Credit Agreement remain outstanding, and

(ii) 33.33% of proceeds from the sale of the Liquidating Company Assets shall be distributed to holders of General Unsecured Claims and Second Lien Claims on a Pro Rata basis; and

(b)    Second, if there are no remaining outstanding claims under the Liquidating Companies Exit Credit Agreement, then 100% of the proceeds from the sale of the Liquidating Company Assets shall be distributed to holders of General Unsecured Claims and Second Lien Claims on a Pro Rata basis;

provided, however, that:

(I)                 if proceeds of the Liquidating Company Assets, net of (A) the amount of the Wind-down Reserve and (B) interest, fees and other costs related to the Liquidating Companies Exit Credit Agreement, exceed 250% of Assumed Net Recoveries, 75% of such excess proceeds shall be transferred to NewCo and shall not become Distributable Cash;

(II)                 upon a sale or other disposition by NewCo of the business or assets of Ambient, (A) if Ambient Net Proceeds exceed $3 million and are equal to or less than $5 million, 10% of the Ambient Net Proceeds in excess of $3 million shall be transferred to the Liquidating Companies, (B) if Ambient Net Proceeds exceed $5 million and are equal to or less than $7 million, $200,000 plus 15% of the Ambient Net Proceeds in excess of $5 million shall be transferred to the Liquidating Companies, (C) if Ambient Net Proceeds exceed $7 million and are equal to or less than $10 million, $500,000 plus 20% of the Ambient Net Proceeds in excess of $7 million shall be transferred to the Liquidating Companies, and (D) if Ambient Net Proceeds exceed $10 million, $1.1 million plus 25% of the Ambient Net Proceeds in excess of $10 million shall be transferred to the Liquidating Companies; and

(III)           upon a sale or other disposition by NewCo of the business or assets of Autoseis, (A) if Autoseis Net Proceeds exceed $500,000 and are equal to or less than $1 million, 15% of the Autoseis Net Proceeds in excess of $500,000 shall be transferred to the Liquidating Companies, and (B) if Autoseis Net Proceeds exceed $1 million, $75,000 plus 25% of the Autoseis Net Proceeds in excess of $1 million shall be transferred to the Liquidating Companies.

### 7.4     Liquidating Companies.

Subject to Section 6.3 and the implementation of the merger and dissolution of the Debtors other than Holdings into Post-Effective Date Holdings in accordance with any applicable non-bankruptcy law, the Debtors shall continue to exist as the Liquidating Companies on and after the Effective Date, with all of the powers of corporations or limited liability companies under applicable law.   The certificates of incorporation and by-laws, and similar equity documents, of the Liquidating Companies shall, inter alia, prohibit the issuance of nonvoting stock to the extent required by section 1123(a)(6) of the Bankruptcy Code.

### 7.5     Succession of Plan Administrator.

On the Effective Date, the Plan Administrator shall be appointed and shall succeed to such powers as would have been applicable to the Liquidating Companies' officers and directors.   The Liquidating Companies shall be authorized to be (and, upon the conclusion of the winding up of their affairs, shall be) dissolved by the Plan Administrator.   Following the Effective Date, all Liquidating Company Assets shall be managed by the Plan Administrator and shall be held in the name of the Liquidating Companies free and clear of all Claims against the Debtors and Interests in Holdings, except for obligations under the Liquidating Companies Exit Credit Agreement and   the rights to Distribution afforded to holders of Claims under the Plan. The Liquidating Companies shall make the remaining Distributions required under the Plan in accordance with the Plan's terms.   After the Effective Date, the Debtors shall have no liability to holders of Claims or Interests other than as provided for in the Plan, Plan Documents and Confirmation Order.   The Plan will be administered and actions will be taken in the name of Liquidating Companies through the Plan Administrator irrespective of whether any of the Debtors or Liquidating Companies have been dissolved.   The Plan Administrator shall comply with all applicable provisions of the Plan.

### 7.6     Liquidation of Estates and Distribution of Proceeds.

After the Effective Date, all Liquidating Company Assets shall be sold or otherwise liquidated or abandoned pursuant to the Plan.   Any proceeds of such sale or other liquidation shall be used to fund the Wind-down Reserve (to the extent of any shortfall therein), repay the Liquidating Companies Working Capital Facility, make Distributions on account of Administrative Claims, Fee Claims, U.S. Trustee Fees, Priority Tax Claims, First Lien Agent Fees, Other Priority Claims, Other Secured Claims, and thereafter become Distributable Cash.

**7.7      Wind-down Reserve.**

The activities and operations of the Liquidating Companies and the Plan Administrator shall be funded through the Wind-down Reserve, and shall be subject to the Wind-down Budget.  The Liquidating Companies may maintain appropriate reserves for Disputed Administrative Claims, Fee Claims, Priority Tax Claims, Other Priority Claims and Other Secured Claims.  Upon the dissolution of the Liquidating Companies, or such earlier time as it appears, in the reasonable view of the Plan Administrator, that the Wind-down Reserve is overfunded, all amounts remaining (or constituting excess funds) in the Wind-down Reserve shall be used to repay the Liquidating Companies Working Capital Facility, make Distributions on account of Administrative Claims, Fee Claims, U.S. Trustee Fees, Priority Tax Claims, First Lien Agent Fees, Other Priority Claims, Other Secured Claims, and thereafter become Distributable Cash.

**7.8      Designation and Powers of Plan Administrator.**

The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation, shall be reflected in the Plan Administrator Agreement.  The Plan Administrator shall act for the Liquidating Companies in a fiduciary capacity as applicable to a board of directors, subject to the provisions hereof.  The duties and powers of the Plan Administrator shall include the following, but in all cases shall be consistent with the terms of the Plan:

(a)      To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any officer, director, member, managing member, shareholder or  partner of the Liquidating Companies with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, member, managing member, shareholders and partners, including, without limitation, amendment of the certificates of incorporation and by-laws of the Liquidating Companies, merger of any Liquidating Company into another Liquidating Company and the dissolution of any Liquidating Company;

(b)      To maintain accounts, make Distributions and take other actions consistent with the Plan and the implementation hereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Companies, even in the event of the dissolution of the Liquidating Companies;

(c)      Subject to the applicable provisions of the Plan, to collect and liquidate all Liquidating Company Assets pursuant to the Plan and to administer the winding-up of the affairs of the Liquidating Companies;

(d)      To object to any Claims (Disputed or otherwise) not allowed pursuant to the Plan or Final Order of the Court, and to compromise or settle any Claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the

United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order, and/or to seek Court approval, as necessary, for any Claims settlements;

(e)     To make decisions, without further Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Companies or the Plan Administrator and to pay, from the Wind-down Reserve, subject to the Wind-down Budget, the fees and charges incurred by the Liquidating Companies on or after the Effective Date for fees of professionals, disbursements, expenses or related support services relating to the winding down of the Liquidating Companies and implementation of the Plan without application to the Court;

(f)     To seek a determination of tax liability under section 505 of the Bankruptcy Code and to file tax returns and pay taxes, if any, related to the Debtors, the Liquidating Companies or the sale of Liquidating Company Assets;

(g)     To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan;

(h)     To make all Distributions to holders of Allowed Claims provided for or contemplated by the Plan;

(i)     To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Court and as deemed appropriate by the Liquidating Companies or the Plan Administrator;

(j)     To collect any accounts receivable or other claims of the Liquidating Companies or the Estates not released, transferred to NewCo or otherwise disposed of pursuant to the Plan;

(k)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the Liquidating Companies' obligations thereunder;

(l)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of his or her choice, any assets of the Liquidating Companies if the Plan Administrator concludes that such assets are of no benefit to the Estates or Liquidating Companies;

(m)     To prosecute and/or settle claims held by the Liquidating Companies and exercise, participate in or initiate any proceeding before the Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and litigate or settle such claims on behalf of the Debtors or Liquidating Companies, and pursue to settlement or judgment such actions;

(n)     To purchase or create and carry all insurance policies on behalf of the Liquidating Companies and pay all insurance premiums and costs it deems necessary or advisable;

(o)     To implement and/or enforce all provisions of the Plan; and

(p)     To collect and liquidate all Liquidating Company Assets and administer the winding-up of the affairs of the Debtors and the Liquidating Companies including, but not limited to, causing the dissolution of each Liquidating Company and closing the Reorganization Cases.

### 7.9     Resignation, Death or Removal of Plan Administrator.

The replacement of the Plan Administrator in the event of resignation, death or removal shall be governed by the Plan Administrator Agreement.  Any resigning or removed Plan Administrator (or the executor or other representative of any deceased or incapacitated Plan Administrator) shall transfer, in exchange for consideration of one dollar ($1), all common stock of Holdings owned by such Plan Administrator to the successor Plan Administrator.

### 7.10     Distributions to Holders of Claims Generally.

(a)     **Distributions on Account of Allowed Claims Only.**  Notwithstanding anything herein to the contrary, no Distribution shall be made on a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(b)     **Method of Cash Distributions.**  Any Cash payment to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c)     **Distributions on Non-Business Days.**  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d)     **Disputed Payments.**  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidating Companies may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

(e)     **Withholding Taxes.**  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

### 7.11     Distributions to Holders of Second Lien Claims and General Unsecured Claims.

(a)     **Claims Reconciliation.**  The Plan Administrator shall (i) issue detailed quarterly reports respecting the progress made in reconciling General Unsecured Claims and any Distributions or other payments made by the Liquidating Companies pursuant to the Waterfall and (ii) maintain an accurate register (including based on information provided by the Bankruptcy Court-appointed claims agent) of Claims and the status of each.

26

(b)    **Disputed Claims Reserve.**  The Liquidating Companies shall set aside and reserve, from the funds distributed under the Waterfall, for the benefit of each holder of a Disputed General Unsecured Claim, an amount equal to the distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim as of the Effective Date in an amount equal to (i) the amount of such Claim as estimated by the Court pursuant to an Estimation Order or (ii) if no Estimation Order has been entered with respect to such Claim, the greater of (A) the amount listed in the Debtors' schedules and (B) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court as a liquidated amount.  Such reserved amounts, collectively, shall constitute the "**Disputed Claims Reserve**" and the difference between (y) the amount so reserved for each such Claim and (z) the amount of federal, state and local taxes paid by the Liquidating Companies with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled under the Plan.

(c)    **Waterfall Distributions.**

(i) <u>Initial Distributions</u>.  As soon as reasonably practicable after (A) the initial deadline for objecting to Claims and (B) payment in full of all obligations under the Liquidating Companies Working Capital Facility and termination of the commitment thereunder, the Liquidating Companies shall distribute to each holder of an Allowed Second Lien Claim and Allowed General Unsecured Claim, such holder's Pro Rata share of Distributable Cash.  The date of such Distributions shall be the "**Initial Waterfall Distribution Date**."

(ii) <u>Distributions on Disputed Claims</u>.  No Distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  On or as soon as reasonably practicable after the Periodic Waterfall Distribution Date after a Disputed Claim becomes an Allowed Claim, the Liquidating Companies shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder by such Periodic Waterfall Distribution Date in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed, as of the Effective Date. Subsequent distributions, if any, to holders of such Claims shall be made in accordance with Section 7.11(c)(iv) of the Plan.

(iii) <u>Treatment of Excess Cash in Disputed Claims Reserve</u>.  To the extent a Disputed Claim (or a portion thereof) is determined by Final Order or agreement of the parties not to be an Allowed Claim, any Cash previously reserved for such Disputed Claims (or portion thereof) shall become Distributable Cash.

(iv) <u>Periodic Distributions of Distributable Cash</u>.  After the Initial Waterfall Distribution Date, additional Cash shall become Distributable Cash from:  (A) the subsequent sale of Liquidating Company Assets, (B) a transfer of a Ambient Net Proceeds or Autoseis Net Proceeds to the Liquidating Companies under Section 7.3, (C) amounts released from the Disputed Claims Reserve pursuant to the terms of the Plan; and (D) pursuant to Section 7.13(b) hereof, certain Unclaimed Property.  On each

Periodic Waterfall Distribution Date, the Liquidating Companies shall distribute to each holder of an Allowed Waterfall Claim each such holder's share of the Distributable Cash remaining on such date.  Periodic Waterfall Distribution Dates shall continue to occur until (W) all Liquidating Company Assets have been sold or abandoned by the Plan Administrator, (X) the sale of the Ambient and Autoseis assets by NewCo shall have occurred and any net proceeds attributable to the Liquidating Companies under Section 7.3 shall have been distributed to the Liquidating Companies, (Y) all Disputed Claims have been resolved, and (Z) all Unclaimed Property, if any, shall have become Distributable Cash.

(v)  _Final Distributions to Holders of Waterfall Claims_.  On the first Business Day that is ten (10) days after the date on which all of the events described in clauses (W) through (Z) of subsection 7.11(c)(iv) hereof shall have occurred, the Liquidating Companies shall distribute (each such Distribution, a "**Final Waterfall Distribution**") to each holder of an Allowed Waterfall Claim such holder's share of the remaining Distributable Cash pursuant to the Waterfall.

(vi) _Minimum Distributions to Holders of Waterfall Claims_.  The Plan Administrator, in his sole discretion, may determine not to make a Distribution (other than a Final Waterfall Distribution), from Distributable Cash (A) to a holder of an Allowed Waterfall Claim, to the extent that such Distribution is less than fifty dollars ($50), and (B) on any Periodic Waterfall Distribution Date if the aggregate Distributions to be made from Distributable Cash on such date would not exceed $100,000.  Notwithstanding anything to the contrary herein, if the aggregate amount of Final Waterfall Distributions to be made to holders of Allowed Waterfall Claims does not exceed $5,000, the Plan Administrator may determine that such aggregate amount shall not be distributed to such holders but shall instead be contributed by the Liquidating Companies, in lump sum, to a charity designated by the Liquidating Companies.  The Plan Administrator shall have no liability to any holder of Claims for making any determination to delay or forgo Distributions in accordance with the terms of this section.

### 7.12      **Cash Held by the Liquidating Companies.**

All Cash held by the Liquidating Companies shall be invested in accordance with section 345 of the Bankruptcy Code, or as otherwise permitted by a Final Order of the Court and as deemed appropriate by the Plan Administrator.  For so long as any amounts under the Liquidating Companies Exit Credit Agreement shall remain outstanding, all such Cash shall be subject to a first priority lien in favor of the lenders under the Liquidating Companies Exit Credit Agreement.

### 7.13      **Unclaimed Property.**

(a)      **Escrow of Unclaimed Property.**  The Liquidating Companies shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.

(b)   **Distribution of Unclaimed Property.**   At the end of one year following the relevant Distribution date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims theretofore entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, whereupon (i) all right, title and interest in and to such property shall immediately and irrevocably revest in the Liquidating Companies and shall be used to repay the Liquidating Companies Working Capital Facility, make Distributions on account of Administrative Claims, Fee Claims, U.S. Trustee Fees, Priority Tax Claims, First Lien Agent Fees, Other Priority Claims, Other Secured Claims, and thereafter become Distributable Cash, (ii) such holders shall cease to be entitled thereto and (iii) any such Unclaimed Property that is Cash (including Cash interest, maturities, dividends and the like) shall be property of the Liquidating Companies, free of any restrictions thereon other than any restriction imposed under the Plan.

### 7.14     No Recourse to Liquidating Companies or Plan Administrator.

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient Distributable Cash to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no Claim holder shall have recourse to the Debtors, the Liquidating Companies, the Plan Administrator, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective property.   THUS, THE COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### ARTICLE VIII

### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

(a)   **Release of Liens.**   Unless a particular Claim is Reinstated or except (Y) as otherwise set forth herein or (Z) respect to the Assumed First Lien Debt and any secured debt that may be issued by NewCo to a First Lien Lender: (i) each holder of a Secured Claim or a Claim that is purportedly secured (including an Other Secured Claim) shall, on or immediately before the Effective Date (or, in the case of Other Secured Claims treated pursuant to Section 4.4(c) of the Plan, on or prior to the date of the return of the relevant collateral) and as a condition to receiving any Distribution hereunder:  (A) turn over and release to the Debtors, the Liquidating Companies or NewCo, as applicable, any and all property of the Debtors or the Estates that secures or purportedly secures such Claim; and (B) execute such documents and instruments as the Debtors, NewCo or the Liquidating Companies require to evidence such claimant's release of such property or lien securing such Claim; and (ii) on the Effective Date (or such other date described in this subsection), all claims, right, title and interest in such property shall revert to the Liquidating Companies or NewCo, as applicable, free and clear of all Claims and interests, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind.  All liens of the holders of such Claims or Interests in property of the Debtors, the Estates, NewCo and/or the Liquidating Companies shall be deemed to be

29

canceled and released as of the Effective Date (or such other date described in this subsection). Notwithstanding the immediately preceding sentence, any such holder of a Disputed Claim shall not be required to execute and deliver such release of liens until ten (10) days after such Claim becomes an Allowed Claim or is Disallowed.

(b)     **Cancellation of Stock/ Instruments.**  The Parent Interests, the First Lien Facility, the DIP Facility (each including any related credit agreement, indenture, security and guaranty agreements, interest rate agreements and commodity hedging agreements), the Second Lien Facility and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date; provided, that (i) the Assumed First Lien Debt, and the liens securing it, shall remain continue in accordance with the Liquidating Companies Exit Credit Agreement, (ii) and the Debtors' obligations under the DIP Facility shall be assumed by NewCo, and (iii) NewCo may assume a portion of the Debtors' obligations to the First Lien Lenders.

**8.2     Vesting of Causes of Action in NewCo.**

Except as otherwise provided in the Plan, all Causes of Action of the Debtors, including but not limited to those set forth on the Schedule of Retained Causes of Action contained in the Plan Supplement, shall be vested in NewCo, and NewCo may enforce any claims, rights and causes of action that the Debtors or the Estates may have previously held; provided, however, that in accordance with Sections 6.9 and 8.4 of the Plan, the Liquidating Companies shall retain and shall have standing to assert, Causes of Action solely to the extent necessary to assert rights of setoff or recoupment in respect of a Claim for which the Liquidating Companies are responsible hereunder and that would otherwise be Allowed.  The retention of such rights by the Liquidating Companies may not result in an affirmative recovery by the Liquidating Companies from any actual or potential defendant.

**8.3     Release of Claims.**

(a)     **Satisfaction of Claims and Interests.**  The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Interests.

(b)     **Debtor Releases.**  *Except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, including good faith settlement and compromise of the claims released herein and the services of the Debtors' current officers, directors, managers and advisors in facilitation of the expeditious implementation of the transactions contemplated hereby, each Debtor and debtor in possession, and any person seeking to exercise the rights of the Debtors' estates, including without limitation, the Liquidating Companies, any successor to the Debtors, or any representative of the Debtors' estates appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, including the Plan Administrator, shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge and shall be deemed to have provided a full discharge and release to each*

*Released Party and their respective property (and each such Released Party so released shall be deemed fully released and discharged by each Debtor, debtor in possession, and any person seeking to exercise the rights of the Debtors' estates, including without limitation, the Liquidating Companies, the Plan Administrator, any successor to the Debtors, or any representative of the Debtors' estates appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code) of all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, debts, suits, judgments, damages, demands, rights, causes of action, remedies and liabilities whatsoever, (other than all rights, remedies and privileges to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents (including, without limitation, the Plan Documents) delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based on, related to, or in any manner arising from, in whole or in part, any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Liquidating Companies, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the Chapter 11 Cases, the parties released pursuant to this Section 8.3(b), the Chapter 11 Cases, the Plan or the Disclosure Statement, or any related contracts, instruments, releases, agreements and documents, that could have been asserted by or on behalf of the Debtors, the debtors in possession or their Estates, or any of their affiliates, whether directly, indirectly, derivatively or in any representative or any other capacity, individually or collectively, in their own right or on behalf of the holder of any Claim or Interest or other entity, against any Released Party; provided, however, that in no event shall anything in this Section 8.3(b) be construed as a release of any (i) Intercompany Claim or (ii) Person's fraud, gross negligence, or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors.*

(c) **Releases by Holders of Claims and Interests.** *Except as expressly set forth in the Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Releasing Party (regardless of whether such Releasing Party is a Released Party), in consideration for the obligations of the Debtors and the other Released Parties under the Plan, the Distributions provided for under the Plan, and the contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan and the Restructuring Transaction, will be deemed to have consented to the Plan for all purposes and the restructuring embodied herein and deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge (and each entity so released shall be deemed released and discharged by the Releasing Parties) all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, debts, suits, judgments, damages, demands, rights, causes of action, remedies or liabilities whatsoever, including all derivative claims asserted or which could be asserted whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based on, related to, or in any manner arising from, in whole or in part, any act or omission, transaction, event or other occurrence*

taking place on or prior to the Effective Date in any way relating to the Debtors, the Liquidating Companies, the Chapter 11 Cases, the purchase or sale or rescission of the purchase or sale of any security of the Debtors or the Liquidating Companies, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims or Interests prior to or in the Chapter 11 Cases, the Plan or the Disclosure Statement or any related contracts, instruments, releases, agreements and documents (including the Plan Documents), against any Released Party and its respective property; provided, however, that in no event shall anything in this Section 8.3(c) be construed as a release of any (i) Intercompany Claim or (ii) Person's fraud, gross negligence, or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases in Sections 8.3(b) and (c), which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that such releases are (i) in exchange for the good and valuable consideration provided by the Debtors and the other Released Parties, representing good faith settlement and compromise of the claims released herein, (ii) in the best interests of the Debtors and all holders of Claims and Interests, (iii) fair, equitable, and reasonable, (iv) approved after due notice and opportunity for hearing, and (v) a bar to any of the Releasing Parties asserting any claim or cause of action released by the Releasing Parties against any of the Debtors, the other Released Parties or their respective property.

Notwithstanding anything to the contrary contained herein, with respect to a Released Party that is a non-Debtor, nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States government or any of its agencies whatsoever, including without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States against such Released Party, nor shall anything in the Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceeding against such Released Party for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States, nor shall anything in the Confirmation Order or the Plan exculpate any non-Debtor party from any liability to the United States Government or any of its agencies, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States against such Released Party.

Notwithstanding anything to the contrary contained herein, except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, except with respect to a Released Party that is a Debtor, nothing in the Confirmation Order or the Plan shall effect a release of any claim by any state or local authority whatsoever, including without limitation, any claim arising under the environmental laws or any criminal laws of any state or local authority against any Released Party that is a non-Debtor, nor shall anything in the Confirmation Order or the Plan enjoin any state or local authority from bringing any claim, suit, action or other proceeding against any Released Party that is a non-

*Debtor for any liability whatever, including without limitation, any claim, suit or action arising under the environmental laws or any criminal laws of any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to any state or local authority whatsoever, including any liabilities arising under the environmental laws or any criminal laws of any state or local authority against any Released Party that is a non-Debtor.  As to any state or local authority, nothing in the Plan or Confirmation Order shall discharge, release, or otherwise preclude any valid right of setoff or recoupment.*

*As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall discharge, release, or otherwise preclude:  (i) any liability of the Debtors or Liquidating Companies arising on or after the Effective Date; or (ii) any valid right of setoff or recoupment.  Furthermore, nothing in the Plan or the Confirmation Order: (A) discharges, releases, or precludes any environmental liability that is not a claim (as that term is defined in the Bankruptcy Code), or any environmental claim (as the term "claim" is defined in the Bankruptcy Code) of a governmental unit that arises on or after the Effective Date; (B) releases the Debtors or the Liquidating Companies from any non-dischargeable liability under environmental law as the owner or operator of property that such persons own or operate after the Effective Date; (C) releases or precludes any environmental liability to a governmental unit on the part of any Persons other than the Debtors and Liquidating Companies; or (D) enjoins a governmental unit from asserting or enforcing outside this Court any liability described in this paragraph.*

(d)    **Release Opt-Out**.  *Except as otherwise may be provided in the Confirmation Order, each holder of a General Unsecured Claim or an Interest that does not elect to opt out of the release provisions set forth in this Section 8.3 of the Plan by returning an Opt-Out Notice to the Solicitation Agent on or before the Opt-Out Deadline shall be a Releasing Party and Released Party.*

(e)    **Injunction.**  *Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Companies, the Estates, NewCo, the Plan Administrator or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Liquidating Companies, NewCo, the Plan Administrator or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Companies, NewCo, the Plan Administrator or the Estates or any of*

*their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Liquidating Companies, NewCo, the Plan Administrator, the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan;* <u>provided</u>, <u>further</u>, *that the Releasing Parties are, with respect to Claims or Interests held by such parties, permanently enjoined after the Confirmation Date from taking any actions referred to in clauses (i) through (vi) above against the Released Parties or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the Released Parties or any property of any such transferee or successor;* <u>provided</u>, <u>however</u>, *that nothing contained herein shall preclude any Person from exercising its rights, or obtaining benefits, directly and expressly provided to such entity pursuant to and consistent with the terms of the Plan, the Plan Supplement and the contracts, instruments, releases, agreements and documents delivered in connection with the Plan.*

*All Persons releasing claims pursuant to Section 8.3(b) or (c) of the Plan shall be permanently enjoined, from and after the Confirmation Date, from taking any actions referred to in clauses (i) through (v) of the immediately preceding paragraph against any party with respect to any claim released pursuant to Section 8.3(b) or (c).*

(f)   **Exculpation.**  *None of the Released Parties shall have or incur any liability to any holder of any Claim or Interest for any prepetition or postpetition act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation and execution of the Plan, the Plan Documents, the Chapter 11 Cases, the Disclosure Statement, the dissemination of the Plan, the solicitation of votes for and the pursuit of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition or postpetition activities taken or omission in connection with the Plan or the restructuring of the Debtors except fraud, gross negligence or willful misconduct, each as determined by a Final Order.  The Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan;* <u>provided</u>, <u>however</u>, *solely to the extent that it would contravene any applicable ethical rule of professional conduct, if binding on an attorney of a Released Party, no attorney of any Released Party shall be released by the Debtors or the Liquidating Companies.*

(g)   **Injunction Related to Exculpation.**  *The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities from which such person or entity is exculpated pursuant to Section 8.3(e) of the Plan.*

34

(h)     **Exclusive Jurisdiction.**  The Bankruptcy Court (and the United States District Court for the Southern District of Texas) shall retain exclusive jurisdiction to adjudicate any and all claims or causes or action (i) against any Released Party, (ii) relating to the Debtors, the Plan, the Distributions, the NewCo Common Stock, the Chapter 11 Cases, the Liquidating Companies, NewCo, the Plan Administrator, the Restructuring Transaction, or any contract, instrument, release, agreement or document executed and delivered in connection with the Plan and the Restructuring Transaction, and (iii) brought by the Debtors (or any successor thereto) or any holder of a Claim or Interest.

### 8.4     Objections to Claims and Interests.

Unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed and served on the applicable holder of such Claim not later than 180 days after the later to occur of:  (a) the Effective Date; and (b) the filing of the relevant Claim.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (x) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (y) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (z) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn).

After the Confirmation Date, only the Liquidating Companies shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to Claims. From and after the Effective Date, the Liquidating Companies may settle or compromise any Disputed Claim without Bankruptcy Court approval.  Any Claims filed after any Bar Date, if applicable, shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Liquidating Companies, unless the Person or entity wishing to file such untimely Claim has received prior Bankruptcy Court authority to do so.

### 8.5     Amendments to Claims.

Unless otherwise provided herein, or otherwise consented to by the Plan Administrator, the Debtors or Liquidating Companies, any Claim or amendment to a Claim, which Claim or amendment is filed after the Confirmation Date, shall be deemed Disallowed in full and expunged without any action by the Plan Administrator, the Debtors or Liquidating Companies, unless the holder of such Claim has obtained prior Bankruptcy Court authorization for such filing.

### 8.6     Estimation of Claims.

Any Debtor, Liquidating Company or holder of a Claim may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such

objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, any objecting party may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.

## ARTICLE IX

## EXECUTORY CONTRACTS

### 9.1 Executory Contracts and Unexpired Leases.

(a)     On the Effective Date, all executory contracts and unexpired leases set forth on the Schedule of Assumed Contracts and Leases shall be assumed by the Liquidating Companies and, if applicable, assigned to NewCo, as set forth on such schedule, pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except any executory contract or unexpired lease that is the subject of a Cure Dispute pursuant to Section 9.2 of the Plan and for which the Debtors, Liquidating Companies or NewCo, as the case may be, makes a motion to reject such contract or lease based upon the existence of such Cure Dispute filed at any time.

(b)     Subject to subsection (a) above and Section 9.2 below, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of executory contracts and unexpired leases the assumption or rejection of which is provided for in Section 9.1(a) of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code and such assumption or rejection shall be deemed effective as of the Effective Date.

(c)     Any executory contract or unexpired lease not set forth on the Schedule of Assumed Contracts and Leases shall be deemed rejected as of the Effective Date.

(d)     If the rejection of any executory contract or unexpired lease gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified as a General Unsecured Claim; provided, however, that the General Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Companies, the Plan Administrator, their successors or properties, unless a proof of such Claim is filed and served on the Liquidating Companies within thirty (30) days after the date of notice of the entry of the order of the Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order.

### 9.2    Cure.

(a)    At the election of the Liquidating Companies, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (i) by payment of the default amount (the "**Cure Amount**") in Cash or as soon as reasonably practicable after the later to occur of (A) thirty (30) days after the determination of the Cure Amount and (B) the Effective Date or such other date as may be set by the Bankruptcy Court; or (ii) on such other terms as agreed to by the Debtors or Liquidating Companies and the non-Debtor party to such executory contract or unexpired lease.

(b)    In the event of a dispute (each, a "**Cure Dispute**") regarding:  (i) the Cure Amount; (ii) the ability of the Debtors, the Liquidating Companies or NewCo, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the assumption of an executory contract or unexpired lease, the cure payment required by section 365(b)(1) of the Bankruptcy Code shall be made only following the entry of a Final Order resolving the Cure Dispute and approving the assumption of such executory contract or unexpired lease.  If a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the subject contract or lease prior to resolution of the Cure Dispute, provided that the Debtors reserve Cash in an amount sufficient to pay the full amount asserted by the non-Debtor party to the subject contract (or such other amount as may be fixed or estimated by the Bankruptcy Court).  Such reserve may be in the form of a book entry and evergreen in nature.  The Debtors or Liquidating Companies shall have the right at any time to move to reject any executory contract or unexpired lease based on the existence of a Cure Dispute.

### ARTICLE X

### CONDITIONS PRECEDENT TO
### CONFIRMATION AND CONSUMMATION OF THE PLAN

### 10.1    Conditions Precedent to Confirmation.

Confirmation of the Plan is subject to:

(a)    entry of the Confirmation Order, which shall be in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders; and

(b)    the Plan Documents having been filed in substantially final form prior to the Confirmation Hearing, which Plan Documents shall be in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders.

### 10.2    Conditions to the Effective Date.

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X hereof:

(a)     the Confirmation Order in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders shall have been entered and shall have become a Final Order;

(b)     the Debtors shall have received all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan;

(c)     NewCo shall have been formed;

(d)     the Liquidating Companies Exit Credit Agreement, including all ancillary documents, opinions of counsel and closing certificates, in form and substance reasonably satisfactory to the Debtors and the Required First Lien Lenders, shall have been executed and delivered and entered into by the Liquidating Companies and the lenders under Liquidating Companies Working Capital Facility;

(e)     the Debtors shall have, or shall have received pursuant to the Liquidating Companies Working Capital Facility, the requisite funding to make any Distributions required under the Plan to be made in Cash on the Effective Date;

(f)     all other Plan Documents in form and substance reasonably satisfactory to the Required First Lien Lenders required to be executed and delivered on or prior to the Effective Date shall have been executed and delivered, and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and shall be consistent in all respects with the Plan; and

(g)     all of the reasonable, actual and documented fees and expenses of the Required First Lien Lenders, including, but not limited to, the fees and expenses of Willkie Farr & Gallagher LLP, shall have been paid in full.

### 10.3     Waiver of Conditions Precedent.

Other than the requirement that the Confirmation Order must be entered, which cannot be waived, the requirement that a particular condition be satisfied may be waived in whole or part by the Debtors, with the consent of the Required First Lien Lenders, without notice and a hearing.  The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including, without limitation, any act, action, failure to act or inaction by the Debtors).  The failure of the Debtors to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 10.4     Effect of Non-Occurrence of the Conditions to Consummation.

If each of the conditions to confirmation and consummation of the Plan and the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day that is more than sixty (60) days after the Confirmation Date, or by such later date as is proposed by the Debtors and is reasonably approved by the Required First Lien Lenders

and, after notice and a hearing, by the Bankruptcy Court, upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims against or Interests in the Debtors; or (b) prejudice in any manner the rights of the Debtors, including (without limitation) the right to seek a further extension of the exclusive periods to file and solicit votes with respect to a plan under section 1121(d) of their Bankruptcy Code.

### 10.5    Withdrawal of the Plan.

Subject to the consent of the Required First Lien Lenders, the Debtors reserve the right to modify or revoke and withdraw the Plan at any time before the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date.  If the Debtors revoke and withdraw the Plan: (a) nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or to prejudice in any manner the rights of the Debtors or any Persons in any further proceeding involving the Debtors; and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and no actions were taken to effectuate it.

### 10.6    Cramdown.

Because certain Classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE XI

## ADMINISTRATIVE PROVISIONS

### 11.1    Retention of Jurisdiction.

(a)    **Purposes.**  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(i) to determine the allowability, classification, or priority of Claims upon objection by the Plan Administrator, Liquidating Companies or any other party in interest entitled hereunder to file an objection (including the resolution of disputes regarding any Disputed Claims and claims for disputed Distributions), and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

39

(ii)  to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person;

(iii)  to protect the property of the Estates from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

(iv)  to determine any and all applications for allowance of Fee Claims;

(v)  to determine any Priority Tax Claims, Other Priority Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(vi)  to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(vii)  to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases or to resolve any disputes relating to the appropriate cure amount or other issues related to the assumption of executory contracts or unexpired leases in the Chapter 11 Cases;

(viii)  to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

(ix)  to enter a Final Order closing the Chapter 11 Cases;

(x)  to modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(xi)  to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(xii)  to enable NewCo or the Liquidating Companies, as applicable, to prosecute any and all proceedings to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable

provisions of the Bankruptcy Code or any other federal, state or local laws except as may be waived pursuant to the Plan;

(xiii)  to determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(xiv)  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(xv)  to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, any applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(xvi)  to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(xvii)  to hear and resolve any causes of action involving the Debtors, the Liquidating Companies or the Estates that arose prior to the Confirmation Date or in connection with the implementation of the Plan, including actions to avoid or recover preferential transfers or fraudulent conveyances;

(xviii)  to resolve any disputes concerning any release of a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

(xix)  to approve any Distributions, or objections thereto, under the Plan;

(xx)  to approve any Claims settlement entered into or offset exercised by the Debtors, the Plan Administrator or Liquidating Companies;

(xxi)  To enforce the release, injunction and exculpation sections of the Plan and Confirmation Order; and

(xxii)  to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code;

provided, however, notwithstanding anything to the contrary in the Plan or the Confirmation Order, after the Effective Date, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection any document in the Plan Supplement that has a choice of venue provision, which provision shall govern exclusively.

(b)  **Failure of the Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, then section 11.1(a) of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**11.2     Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply and except for Reinstated Claims governed by another jurisdiction's law, the rights and obligations arising under the Plan shall be governed by the laws of the State of Delaware, without giving effect to principles of conflicts of law.

**11.3     Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**11.4     Amendments.**

(a)     **Preconfirmation Amendment**.  The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the disclosure statement pertaining thereto meet applicable Bankruptcy Code requirements and each such modification is satisfactory to the Required First Lien Lenders.

(b)     **Postconfirmation Amendment Not Requiring Resolicitation.**  After the entry of the Confirmation Order, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan; provided that the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and each such modification is satisfactory to the Required First Lien Lenders.  Any waiver under Section 10.3 hereof shall not be considered to be a modification of the Plan.

(c)     **Postconfirmation/Preconsummation     Amendment     Requiring Resolicitation.**  After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially and adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests; provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by the holders of at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting in each Class affected by such modification, or, alternatively such Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such affected Class; and (iv) the Debtors comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified.

**11.5     Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

### 11.6     Controlling Documents.

To the extent the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any party, the Plan controls the Disclosure Statement and any other such agreements.  To the extent that the Plan is inconsistent with the Confirmation Order, the Confirmation Order (and any other orders of the Bankruptcy Court) control the Plan.

### 11.7     Termination of Professionals.

On the Effective Date, the engagement of each Professional Person retained by the Debtors shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims, and (b) nothing herein shall prevent the Liquidating Companies from retaining any such Professional Person on or after the Effective Date, which retention shall not require Bankruptcy Court approval.

### 11.8     Notices.

All notices or requests in connection with the Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

(a)     if to the Debtors:

Global Geophysical Services, LLC
13927 S. Gessner Road
Missouri City, Texas 77489
Attention: Sean M. Gore, Chief Financial Officer
Telecopier No.: (713) 808-7764
Email: sean.gore@globalgeophysical.com

with a copy to:

Baker Botts LLP
2001 Ross Avenue
Dallas, Texas  75201-2980
Attention: C. Luckey McDowell
           Ian E. Roberts
Telecopier No.: (214) 953-6571
Email: luckey.mcdowell@bakerbotts.com
           ian.roberts@bakerbotts.com

(b)    if to the Required First Lien Lenders:

       Morgan Stanley
       1585 Broadway, 16th Floor
       New York, New York  10036
       Attention:  Colin Adams
       Email: Colin.Adams@morganstanley.com

with copies to:

       Willkie Farr & Gallagher LLP
       787 Seventh Avenue
       New York, New York 10019
       Attention:  Leonard Klingbaum, Esq.
                John C. Longmire, Esq.
       Telecopy:  (212) 728-8111
       E-mail:    lklingbaum@willkie.com
                jlongmire@willkie.com

             -and-

       Willkie Farr & Gallagher LLP
       600 Travis Street, Suite 2310
       Houston, Texas 77002
       Attention:  Jennifer J. Hardy
       E-mail:    jhardy2@willkie.com

(c)    if to the DIP Agent or the First Lien Agent:

       Wilmington Savings Fund Society, FSB
       500 Delaware Avenue, 11th Floor
       Wilmington, DE 19801
       Attention: Loan Agency - Global Geophysical Services
       Telecopier No.: (302) 421-9137
       Email: KMoore@wsfsbank.com

with copies to:

       Kelley Drye & Warren LLP
       101 Park Avenue
       New York, New York 10178
       Attention: Pamela Bruzzese-Szczygiel
       Telecopier No.: (212) 808-7897
       Email: pbruzzese-szczygiel@kelleydrye.com:

### 11.9 Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

Dated: July 20, 2016

Respectfully submitted,

**GLOBAL GEOPHYSICAL SERVICES, LLC**, a
Delaware limited liability company, on behalf of
itself and its subsidiaries

By: _/s/ Sean Gore_____
    Name: Sean Gore
    Title:   Chief Executive Officer